AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Samsung Cell Phone<br>Seized as FP&F No.2021565500028201 Item 002<br>("Target Device #1") | )<br>)<br>)   Case No.  '21 MJ0535<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Wesley Cornue, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wesley Cornue, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date:  02/16/2021

*Judge's signature*

City and state: San Diego, California       HON. JILL L. BURKHARDT, U.S. Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Wesley Cornue, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Black Samsung Cell Phone
> Seized as FP&F No. 2021565500028201 Item 002
> ("Target Device #1")
>
> Black LG Cell Phone
> Seized as FP&F No. 2021565500028202 Item 001
> ("Target Device #2")

the ("**Target Devices**"), as further described in Attachments A-1 and A-2 to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate to the investigation and prosecution of Biviana Olivia GUZMAN and Juan Jose ZELEDON for transportation of illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

1

4. I have been employed by the USBP since 2007, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twelve years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain

2

communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions

3

set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On February 13, 2021, Border Patrol Agent A. Aleman was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. Agent Aleman was dressed in full rough duty uniform with agency insignia and badge fully visible. Agent Aleman was driving a fully marked agency vehicle equipped with fully operational lights and sirens.

12. At approximately 9:25 AM, Agent Aleman was traveling eastbound on Interstate 8, responding to a request for backup from another agent. As Agent Aleman was approaching Ribbonwood Road, he observed a white Dodge sedan with a license plate frame that said "Costa Mesa." Agent Aleman also observed two occupants in the vehicle seated in the front seats. Agent Aleman observed a female driver wearing an orange mask and a male front passenger wearing a black mask. Agent Aleman then exited on Ribbonwood Road to respond to the other call and the white Dodge sedan continued to travel eastbound on Interstate 8.

13. At approximately 9:40 AM, Agent Aleman was observing traffic at the northeast corner of the Ribbonwood Road and Old Highway 80 intersection. Agent Aleman observed the same white Dodge sedan traveling on Old Highway 80 from the east and turn northbound on Ribbonwood Road. As the vehicle passed his location, Agent Aleman observed the same female driver with an orange mask as well as the same male front passenger with the black mask. Agent Aleman also observed two other individuals in the rear passenger seats of the vehicle looking straight ahead.

5

14. Agent Aleman proceeded to follow the vehicle to obtain the license plate and to get a better look inside of the vehicle. As Agent Aleman was attempting to catch up to the vehicle, he observed it turn onto the eastbound lanes of Interstate 8. It is common for vehicles involved in illicit activities to travel eastbound on Interstate 8 to avoid detection at the Border Patrol Immigration Checkpoint located on the westbound lanes of Interstate 8.

15. As Agent Aleman followed behind the vehicle, he requested record checks via service radio to San Diego Sector Radio Dispatch on the vehicle. Record checks revealed that the vehicle was a rental vehicle registered to Nile Valley Enterprises out of Anaheim, California with no international or immigration crossings. As Agent Aleman continued to follow behind the white Dodge, he observed the vehicle traveling at a slower rate of speed than normal traffic. Agent Aleman observed the vehicle traveling at approximately sixty miles per hour with the posted speed limit being seventy miles per hour. Agent Aleman also observed the rear passengers of the vehicle looking straight forward. Agent Aleman then observed the vehicle slowly swerve to the right white line of the lane and then over to the left side of the lane.

16. At approximately 9:45 AM, Agent Aleman initiated a vehicle stop on the white Dodge Dart. The vehicle yielded to the shoulder of the interstate approximately one quarter mile west of the Rio Bend sign on Interstate 8 eastbound. Agent Aleman approached the white Dodge on the passenger side and identified himself as a Border Patrol Agent to the driver, later identified as defendant Biviana Olivia GUZMAN. Agent Aleman asked GUZMAN what country she was a citizen of in the English language and she replied "United States." Agent Aleman then asked the front passenger, later identified as defendant Juan Jose ZELEDON, what country he was a citizen of and he replied "United States." Agent Aleman then conducted an immigration inspection on the two individuals in the rear passenger seats. Both

6

individuals, later identified as Blanca Neyi LOPES-Luna and Nazario PEREZ-Cruz, stated they were citizens of Mexico without any immigration documents that would allow them to live in or remain in the United States legally. At approximately 9:48 AM, Agent Aleman placed all four individuals, including GUZMAN and ZELEDON, under arrest. This area is approximately four miles north of the United States/Mexico international boundary and twenty two miles east of the Tecate, California Port of Entry.

17. One Black Samsung Cell Phone (**Target Device #1**) was discovered on GUZMAN's person. During an inventory search of the vehicle a Black LG Cell Phone (**Target Device #2**) was discovered in the vehicle in the passenger seat. ZELEDON later claimed ownership of the Black LG Cell Phone (**Target Device #2**).

18. Defendant GUZMAN was advised of her Miranda Rights. GUZMAN stated she understood her rights and was willing to answer questions without an attorney present. GUZMAN stated she and ZELEDON were traveling to ZELEDON's brother house in El Centro, California for an event. GUZMAN stated they passed what looked like a swap meet and two individuals waved them down and asked for a ride to a gas station.

19. Material witnesses LOPES and PEREZ admitted to being citizens of Mexico illegally present in the United States and not having any documents that would allow them to enter or remain in the United States legally. LOPES and PEREZ admitted to making smuggling arrangements and agreed to pay $8000.00 USD. LOPES and PEREZ stated that they illegally crossed into the United States the morning of January 12, 2021, by climbing over the United States/Mexico International boundary fence. LOPES and PEREZ were guided north by cellphone towards Interstate Highway 94. LOPES and PEREZ stated that they were instructed to hide in some brush near the side of the road and wait overnight for their pickup ride the following morning. LOPES stated that she called her smuggler and was told that a

white sedan was arriving soon to transport them to a nearby gas station. LOPES stated that while waiting on the side of the road, she received another phone call and was told to be on the lookout for a white sedan that is getting close to their location. LOPES stated that she immediately saw a white sedan approaching their location and decided to come out along with PEREZ. LOPES stated that they waived at the mentioned white four door sedan and were asked to get inside. LOPES and PEREZ stated that the vehicle was occupied by a female driver and a male front passenger. LOPES and PEREZ described the driver as a female with tattoos and was wearing a dark sweater and a face mask. LOPES and PEREZ also described the front passenger as a tall male with black hair and tattoos. PEREZ was shown photo lineup and was able to identify Juan Jose ZELEDON as the front passenger of the vehicle.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on January 13, 2021 through February 13, 2021.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

8

subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

26. Because the **Target Devices** were seized at the time of GUZMAN's and ZELEDON's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **January 13, 2021 through February 13, 2021.**

27. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A-1, A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Wesley Cornue
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 16th day of February, 2021.

Hon. Jill L. Burkhardt
United States Magistrate Judge

11

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Samsung Phone
Seized as FP&F No. 2021565500028201 Item 002
("Target Device #1")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1, A-2, A-3 and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **January 13, 2021 through February 13, 2021**:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.